UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **TAWANDA CHANDLER,** *as Personal Representative of the Estate of Christopher Lee*, | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )  Case No.: 7:23-cv-1174-AMM |
| **TUSCALOOSA COUNTY, ALABAMA,** *et al.*, | )<br>)<br>)<br>) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This case is before the court on defendant Tuscaloosa County's motion for summary judgment, Docs. 79–80, which is fully briefed, Docs. 89–90. For the reasons explained below, Tuscaloosa County's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

On July 16, 2021, Christopher Lee was ordered to serve thirty days in jail for reckless endangerment, possessing a pistol without a permit, and obstructing a government operation. Doc. 63 ¶ 23; Doc. 81-4 at 3. Mr. Lee was to report to the

Tuscaloosa County Jail on July 23, 2021, and was to be released on August 22, 2021.[1] Doc. 63 ¶ 23; Doc. 81-4 at 3.

On the morning of August 3, 2021, Mr. Richardson and Mr. Lee got into a physical fight with one another. Doc. 63 ¶ 29; *see* Doc. 81-11. Mr. Lee later died from complications due to physical exertion from the fight. Doc. 63 ¶¶ 33, 35; Doc. 79-1 at 3.

Tawanda Chandler, representing Mr. Lee, filed a complaint in the Circuit Court of Tuscaloosa County against Tuscaloosa County and other individuals allegedly involved in Mr. Lee's death. Doc. 1-1. The defendants removed the action to this court. Doc. 1. Ms. Chandler's third amended complaint includes two claims against Tuscaloosa County: (1) Count VII: a state-law claim for wrongful death for failing to properly maintain a defibrillator at the jail, and (2) Count VIII: a state-law claim for wrongful death for failing to erect or maintain a jail of sufficient size and strength, failing to provide an adequate amount of prison staff, and failing to keep the jail in a reasonably safe state of repair. Doc. 63 ¶¶ 82–89. Tuscaloosa County moved for summary judgment. Doc. 80.

---

[1] The dimensions of Dorm 3, as well as the number of beds in Dorm 3 on the day of the altercation, are disputed. *Compare* Doc. 80 at 7–8 (estimating that the dormitory was 1,004 square feet with eighteen permanent beds and five temporary beds), *with* Doc. 89 at 2–4 (estimating that the dormitory had eighteen beds, three picnic tables, and four "boats," which are temporary beds, and explaining that the 1,004 square-foot estimate came from "one unsupported email that lists out the alleged square footage without providing any foundation or basis for the claim").

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party has carried its burden, Rule 56 requires that the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also* Fed. R. Civ. P. 56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

### III. ANALYSIS

In a status report filed on July 28, 2025, the parties indicated that "in addition to [Ms. Chandler's] claims against Defendants Abernathy and Bailey, [Ms. Chandler] also asserts a claim against Tuscaloosa County for overcrowding." Doc. 77 at 6. So "[Tuscaloosa County's] understanding is that [Ms. Chandler] has abandoned her claim that the County failed to maintain an automatic defibrillator." Doc. 80 at 6.

Ms. Chandler's response to Tuscaloosa County's motion for summary judgment does not address her claim for failure to maintain the defibrillator, nor does she contest Tuscaloosa County's understanding that she has abandoned that claim. *See* Doc. 89. Apart from the issue of abandonment, "[Ms. Chandler] has failed to develop any evidence that the automatic defibrillator (AED) was not properly working at the time of the incident." Doc. 80 at 6–7. "[Ms. Chandler] has further failed to develop any testimony that any alleged failure in maintenance of the AED contributed to the death of [Mr. Lee]." *Id.* at 7. Accordingly, the court **GRANTS** Tuscaloosa County's motion for summary judgment as to Count VII. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir. 1999)

4

(noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but she fails to present any argument concerning this claim to the district court).

As Tuscaloosa County explains, "[Ms. Chandler] has avoided the claim of a constitutional violation and has simply asserted that the County violated a state statute . . . ." Doc. 80 at 11. Alabama Code § 11-14-13 provides that "[t]he county jail must be of sufficient size and strength to contain and keep securely the prisoners which may be confined therein and must contain at least two apartments, properly ventilated so as to secure the health of those confined therein: One for men and one for women." Ms. Chandler does not allege that the jail did not separate men and women. Doc. 80 at 9; *see* Doc. 63 ¶¶ 86–89. Accordingly, Ms. Chandler's claim against Tuscaloosa County alleges violation of the "duty to erect and maintain a jail of sufficient size and strength to secure the prisoners therein, and to keep the jail in a reasonably safe state of repair," which Ms. Chandler alleges "includes the duty to provide an adequate amount of prison staff to secure the prison population." Doc. 63 ¶ 87.

Tuscaloosa County contends that "[Ms. Chandler] is unable to present any evidence that the Tuscaloosa County Jail was not of sufficient size and strength to contain and keep securely the prisoners which may be confined therein." Doc. 80 at 14 (cleaned up). According to Tuscaloosa County, "[t]here were 14 inmates in a cell

5

designed to hold 18." *Id.* "More significantly, . . . [Ms. Chandler] can present no evidence that the size of the jail in any way contributed to the death of [Mr. Lee]." *Id.*

Tuscaloosa County principally asserts that Ms. Chandler's expert, Roger Clark, cannot supply sufficient evidence to defeat summary judgment. *See id.* at 11. Mr. Clark's opinion states that "Dorm 3 of the Tuscaloosa County Jail is grossly over-crowded . . . . Per the [Dorm 3 video] recording, the dorm space that provided beds for 23 inmates was far less than . . . 25 or 35 unencombered [sic] square feet per inmate." Doc. 84-8 at 17. When asked "how [he] came up with this 'grossly overcrowded'" opinion, Mr. Clark testified, "[t]he obvious number of bunks." Doc. 79-2 at 13. He also testified that he reached his conclusion because of "[t]he fact that there were five additional [beds] added even to the 18 bunks that were in that dorm and the size of the dorm." *Id.* When pressed about whether the appropriate focus is the number of beds or the number of inmates actually housed in the dorm, Mr. Clark testified that "an overcrowded pod or dorm . . . implies a lot of stress on the inmates that are housed in there and kept in there under those conditions, whether or not at the time of the assault there were that many was not an issue for that opinion." *Id.* at 14. Mr. Clark's opinion of the overcrowding was based on his observation of video recordings from the jail that "[the beds] weren't stacked up to be taken at random. They were all occupied it looked to [him]." *Id.*

6

Tuscaloosa County contends that "[Mr. Clark's] basis for [the 'grossly overcrowded'] contention appears to be wholly premised on the recommendation of the American Correctional Association that inmates should be provided with 35 unencumbered square feet." Doc. 80 at 11. Mr. Clark was asked about his statement that the dorm space provided "far less than the 25 or 35 unencombered [sic] square feet per inmate." Doc. 84-8 at 17; Doc. 79-2 at 14. Mr. Clark explained that he was referencing the "[American Correctional Association] standard." Doc. 79-2 at 14. But Mr. Clark also acknowledged that "[he] was not given . . . minimum jail standards for Alabama," nor was he aware of any minimum constitutional standard for jail size. *Id.* at 13. So, Mr. Clark explained, he "cited the ACA as an expression of reasonable standard," despite acknowledging that the ACA standard is a recommendation, not a requirement. *Id.* at 13, 15. Using the ACA standard as a reference, Mr. Clark evaluated the dorm space, "the total space" of which he was informed "was 1,004 feet," though he estimated the "unencumbered [space] would be much less." *Id.* at 15.

Tuscaloosa County takes great issue with the fact that Mr. Clark relied on the ACA standard, though "[t]he Alabama Legislature has never established a standard for the minimum area that must be provided to inmates serving time in county jails. Correspondingly, there is also no federal statute that mandates any such standard." Doc. 80 at 11. According to Tuscaloosa County, "[t]he Alabama Legislature has

7

established the minimum requirement for a county jail that it must be of sufficient size and strength to keep the prisoners confined, and that there be separate apartments for men and women." *Id.* at 12 (cleaned up). Further, the jail "shall be fireproof, properly ventilated, sufficiently lighted by day and night, adequately heated and contain adequate sanitary plumbing and sewerage connections." *Id.* (quoting Ala. Code § 14-6-103). Tuscaloosa County contends that it has met those Alabama-specific requirements, and "[t]here simply is no state or federal minimum area required of Alabama jails." *Id.*

Tuscaloosa County further contends that "[e]ven if the Court were to accept [Ms. Chandler's] assertion that the jail *should* have provided 35 feet for each inmate, [Ms. Chandler] cannot demonstrate that the County failed even in that." *Id.* According to Tuscaloosa County, "[Mr. Clark] acknowledged that the dormitory contained 1004 square feet, and that there were fourteen inmates in the dormitory at the relevant time." *Id.* And Tuscaloosa County argues that even if the court finds the jail to have been overcrowded, "[t]here is no evidence that the fight which led to Mr. Lee's death was in any way related to the size of the jail." *Id.* at 13. Finally, Tuscaloosa County argues that "[Ms. Chandler] has adduced no evidence of an inadequate number of staff at the facility," and "there is no evidence that any alleged inadequacy in staffing the facility was the result of any failing on behalf of Tuscaloosa County." *Id.*

8

Tuscaloosa County's arguments about overcrowding are insufficient to support summary judgment. Tuscaloosa County is correct that it may not be liable solely for failing to adhere to ACA recommendations. *See Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) ("[W]hile the recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."). That Tuscaloosa County is not bound by the ACA standards, however, does not mean that Tuscaloosa County is not bound by any standards. As Tuscaloosa County recognizes, "[t]he Alabama Legislature has established the minimum requirement for a county jail that it must be of sufficient size and strength to keep the prisoners confined . . . ." Doc. 80 at 12 (cleaned up). Tuscaloosa County advances no case law explaining what is "sufficient size and strength" under Alabama Code § 11-14-13, or even that such a seemingly factual determination is proper for the court to make. Rather, Tuscaloosa County argues about what is *not* the appropriate standard and then claims that "[Ms. Chandler] is unable to present any evidence that the Tuscaloosa County Jail" did not meet the statute's requirements or that such failure caused Mr. Lee's death. Doc. 80 at 14.

Ms. Chandler has provided evidence to establish a fact dispute sufficient to defeat summary judgment. Mr. Clark, as Ms. Chandler's expert on jail conditions, opined that the jail was overcrowded. *See* Doc. 79-2 at 13. And Mr. Clark did not

9

base this conclusion on an errant belief that Tuscaloosa County was bound by ACA recommendations, but on a factual determination made after careful review of video footage and consideration of those recommendations. *See* Doc. 84-8 at 7–18. In Mr. Clark's professional opinion, based on the video footage of the jail at the time of the incident, the "obvious number of bunks" in the dorm exceeded appropriate amounts, and "that causes stress" on the inmates. Doc. 79-2 at 13–14. And based on Mr. Clark's background, "in the professional standard of wisdom . . . overcrowding causes – is a factor in causing fights." *Id.* at 14.

It is not for the court to weigh Mr. Clark's testimony or determine the veracity of it. *See Anderson*, 477 U.S. at 242–43 ("At the summary judgment stage, the trial judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Mr. Clark's testimony creates a genuine issue of material fact as to whether the Tuscaloosa County Jail was "of sufficient size" on the day of Mr. Lee's death and whether any alleged overcrowding played a role in causing Mr. Lee's death. Accordingly, the court **DENIES** Tuscaloosa County's motion for summary judgment as to Count VIII.

Tuscaloosa County is, however, correct that it may not be liable for failing "to provide an adequate amount of prison staff to secure the prison population." Doc. 80 at 13 (quoting Doc. 63 ¶ 84). "Alabama counties possess some duties with respect

to county jails." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1289 (11th Cir. 1998). "However, none of these duties relates to the daily operation of the jails or to the supervision of inmates." *Id.* "The duties of the counties with respect to the jails are limited to funding the operation of the jail and to providing facilities to house the jail." *Id.* (cleaned up). "The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners." *Id.* at 1289–90. "In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail." *Id.* at 1290. "The duty to maintain a jail under § 11–14–10 is merely the duty to keep the jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Id.* (cleaned up). Tuscaloosa County has "no responsibility for daily operation of county jails and no authority to dictate how jails are run." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2001), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Accordingly, Tuscaloosa County may not be liable for failing to provide an adequate amount of prison staff.

Similarly, "the only allegation of failure of the county to maintain the jail relates to the maintenance of one of the AEDs, which [Ms. Chandler] appears to have abandoned," Doc. 80 at 14, and on which the court has already granted

11

summary judgment in favor of Tuscaloosa County. Accordingly, Tuscaloosa County may not be liable for failure to maintain the jail.

## IV.  CONCLUSION

For the reasons explained above, the court **GRANTS IN PART** and **DENIES IN PART** Tuscaloosa County's motion for summary judgment.

**DONE** and **ORDERED** this 8th day of January, 2026.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE